UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

LARRY THOMAS,                                    :

                Plaintiff,           :           14 Civ. 7206 (RA) (AJP)

        -against-                    :           **REPORT & RECOMMENDATION**

CAROLYN W. COLVIN, Commissioner of               :
Social Security,
                                                 :
             Defendant.            :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**ANDREW J. PECK, United States Magistrate Judge:**

        Plaintiff Larry Thomas brings this action pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), challenging the final decision of the Commissioner of Social Security denying him Social Security Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").  (Dkt. No. 2: Compl.)  Presently before the Court is the Commissioner's motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).  (Dkt. No. 18: Comm'r Notice of Motion.)  Thomas has not responded to the Commissioner's motion.  Indeed, the Court scheduled a conference (Dkt. No. 23) for July 28, 2015 to determine whether Thomas had any response to the motion, but he did not show up, despite having returned the certified mail receipt for the order scheduling the conference.

        For the reasons set forth below, the Commissioner's motion for judgment on the pleadings (Dkt. No.18) should be <u>GRANTED</u>.  Indeed, it also should be granted for Thomas' failure to obey court orders and failure to prosecute the case.

## FACTS

### Procedural Background

Thomas applied for SSI and DIB on August 4, 2011, alleging disability since December 23, 2010.  (Dkt. No. 17: Administrative Record ("R.") 123, 132.)  The Social Security Administration ("SSA") denied Thomas' application on October 7, 2011.  (R. 66-70.)  On December 11, 2012, Thomas had a hearing before Administrative Law Judge ("ALJ") Hilton R. Miller.  (R. 34-57.)  On January 13, 2013, ALJ Miller denied Thomas' claim.  (R. 8-21.)

The Appeals Council denied review on August 6, 2014.  (R. 1-3.)  The period at issue for Thomas' application runs from December 23, 2010, when Thomas alleges he became disabled, through December 11, 2013, the date of ALJ Miller's decision.

### Non-Medical and Vocational Evidence

Thomas, born on April 30, 1961 (R. 132), was fifty years old at the alleged December 23, 2010 onset of his disability, and almost fifty-two on the date of his hearing  (R. 36).  He attended school through the eleventh grade and has a GED.  (R. 38.)

Thomas has not worked since 2009, when he was laid off.  (R. 37-38.)  Thomas looked for employment after he was laid off in 2009, but the poor economy prevented him from finding employment.  (R. 38.)  Thomas received income in 2010 by "doing little odds and ends for the elderly in the building, . . . [like] going to the store."  (R. 38.)  Thomas is a "chef by trade" (R. 37), although he did not attend culinary school  (R. 37-38.)  Thomas also is a barber, although he did not go to school to be a barber.  (R. 39.)  Thomas has worked as a cook at Pace University, Belmont Race Track, Westchester Medical Center and Service with a Smile; a maintenance worker for the New York City Department of Parks and Recreation, C.H.P. Management, Gateway Meat Packing and Tile and Grout Company; a counterman at System Plumbing; and as a barber.  (R. 163-

69, 78)  Thomas was employed at each job for at least six months.  (R. 178.)

As a cook at Pace University in 2008-2009, Thomas "stood on [his] feet all day serving food, making plates and sandwiches." (R. 164, 178.)  Thomas walked, stood, kneeled, and handled/grabbed/grasped large objects for eight hours a day.  (R. 164.)  Thomas "lifted boxes of frozen food from the basement to the first floor all day." (Id.)  Thomas frequently lifted up to fifty pounds.  (Id.)  At N.Y.C. Parks and Recreation Thomas picked up trash, mowed the lawn, shoveled snow and operated a weed whacker.  (R. 165.)  Thomas walked, stood, sat, climbed, kneeled, crouched, crawled and handled/grabbed/grasped large objects.  (Id.)  Thomas stood and walked for all of the eight hour workday, and carried up to twenty pounds frequently.  (R. 165, 178.)  As a cook at Belmont Race Track, Thomas used knives, pots, pans and kitchen utensils.  (R. 166.)  Thomas stood and kneeled for eight hours a day, and lifted up to ten pounds frequently.  (Id.)  As a cook for Service with a Smile, Thomas washed dishes and  stood to make food and trays for the elderly.  (R. 167.)  Thomas walked, stood, kneeled and lifted trays of food all day, frequently lifting up to ten pounds.  (Id.)  As a maintenance worker at C.H.P. Management, Thomas buffed, mopped and waxed the floor and took out the trash.  (R. 168.)  Thomas walked, stood, sat, kneeled, crouched and handled/grabbed/grasped large objects.  (Id.)  Thomas carried up to twenty pounds frequently. (Id.)  As a maintenance worker at Shelter Management, Thomas took out trash, mopped the floor, buffed and waxed the floor, and picked up trash around the complex.  (R. 169.)  Thomas walked, stood, sat and carried bags of trash, frequently lifting up to twenty pounds.  (Id.)  As a self-employed barber, Thomas worked eight hours a day, five days per week, and carried up to ten pounds.  (R. 178.)

Thomas' August 4, 2011 disability report (R. 171-77) lists the following physical or mental conditions: diabetes, high blood pressure, cholesterol, shortening of breath, kidney problems, vision problems, problems with feet, pain in the left arm and depression (R. 172).  These conditions

cause Thomas pain or other symptoms.  (Id.)  Thomas' first office, clinic or outpatient visit was in 2007 and his most recent visit was in August 2011.  (R. 176.)  Thomas' last emergency room visit and  overnight hospital stay was from  July 3, 2011 until July 5, 2011.  (Id.)   Thomas' Disability Report - Appeal contained no changes in his condition and no new conditions.  (R. 187.)

Thomas completed a Function Report on August 8, 2011.  (R. 151-62.)  Thomas claimed he "cannot stand for a long period of time or be out in the sun-cold weather."  (R. 151.)  Thomas stated that he "use[d] to be able to stand longer, walk longer [and] not be out of breath [as] soon as [he] start[ed] to walk."  (R. 152.)  Thomas' sleep is not affected by his conditions.  (Id.)  Thomas has no problem with personal care and does not need special help or reminders to take care of his personal needs and grooming.  (R.152-54.)  Thomas prepares his own food daily  (R. 154) and there has been no change in his cooking habits since the alleged onset of his conditions  (R. 153).  Thomas does not do any chores "because [he] can not be in the sun for a long period of time or stand for a long period of time."  (R. 153.)  Thomas goes outside every day, and walks, rides in cars and uses public transportation.  (Id.)  Thomas does not need aids to walk and can go out alone.  (R. 153, 157.)  Thomas shops for food for one hour, twice a month.  (R. 155.)  Thomas does his own laundry.  (R. 46.)  Thomas goes to the park every day and goes to church on Sundays.  (R. 156.)  He watches TV and reads books.  (R. 46.)  Thomas stated that he cannot perform heavy lifting or stand for "a long time."  (R. 156.)  Thomas claimed that he feels pain in his leg, back, arms and stomach and that the pain lasts all day, every day.  (R. 159.)  Thomas claimed that walking, standing, lifting and running bring on the pain.  (Id.)  Thomas took Ibuprofen for the pain.  (Id.)

Thomas testified that he felt he was disabled because his infirmities "keep[] [him] away from [his] job."  (R. 37.)  Thomas has diabetes, hypertension, cysts and back pain.  (R. 39.)  Thomas reported that he cannot stand more than five to ten minutes.  (R. 37.)  Thomas stated that

5

he takes eight pills a day, some of which make him drowsy but "they don't knock [him] out."  (R. 40-41.)  Thomas checks his blood sugar three times a day.  (R. 43.)  Thomas claimed that he has neuropathy in his right hand that started five months prior to the hearing.  (R. 44.)  Thomas is right handed.  (Id.)  His right hand feels numb, but there is no pain.  (R. 44-45.)  Thomas reported that his back pain started in 2000 after a car accident but his back does not bother him all the time.  (R. 45.)  Thomas claimed he can only lift and carry five to ten pounds.  (Id.)  Thomas stated that he has shortness of breath when he walks.  (R. 47.)

Vocational expert Darren K. Flomberg testified at Thomas' December 11, 2012 hearing.  (R. 47, 116-119.)  ALJ Miller asked Flomberg to

> consider a hypothetical individual of [Thomas'] age, education, work education with the residual functional capacity, can lift and/or carry up to twenty pounds occasionally, ten pounds frequently, stand and/or walk at normal brisk pace for about six hours out of an eight hour work day, sit with normal breaks for a total of about six hours in an eight hour work day, can frequently climb ramps and stairs, no ladders, ropes or scaffolding, avoid concentrated exposure to fumes, dust, odors, gasses, poor ventilation, and takes into account frequent fine and gross manipulation utilizing the upper bi-lateral extremities.

(R. 49-50.)  Flomberg opined that with these limitations there would still be jobs that the person could perform.  (R. 50.)  Flomberg stated that of the past jobs the hypothetical person performed he could still be a counter clerk or a handyman.  (Id.)  Flomberg opined that the hypothetical individual could perform other jobs as he had transferable retail sales skills (R. 51) and cooking skills (R. 56).  Flomberg noted that the hypothetical individual could work as a sales clerk of food, a salesclerk of parts or a sales person of general merchandise, all of which are light strength, semi-skilled jobs.  (R. 52-53.)

**Medical Evidence**

**St. Barnabas Hospital**

Thomas was seen in the emergency room on January 17, 2011. (R. 229-30.) Thomas' chief complaint was a sore throat. (R. 230.) Reviews of all Thomas' organ systems were negative, and the attending physician diagnosed pharyngitis. (Id.)

On July 4, 2011, Thomas again went to the emergency room, complaining of constant urination, dry mouth and abdominal pain. (R. 199-200, 204.) Thomas stated that he had a history of diabetes. (R. 199.) Thomas was diagnosed with uncontrolled diabetes mellitus with a history of hypertension. (R. 200-04.) Thomas was admitted for blood sugar control. (R. 204.) A physical examination was performed and the results largely were unremarkable. (R. 208.) The physician noted that Thomas was mildly obese and complained of mild pain in his abdomen. (Id.) The attending physician opined that Thomas' diabetes was "probably" uncontrolled, secondary to noncompliance with his medications. (R. 209.) A computed tomography ("CT") of Thomas' abdomen revealed scattered sigmoid diverticular with no evidence of diverticulitis,[1] hepatomegaly,[2] right renal cysts and a left adrenal nodule. (R. 221-22.) Thomas was discharged on July 5, 2011. (R. 204.)

On July 10, 2012, Thomas underwent a colonoscopy and was diagnosed with left mild diverticulitis and hemorrhoids. (R. 741.) A high fiber diet was recommended. (Id.)

On October 1, 2012, Thomas was seen at the St. Barnabas Hospital Medicine Clinic

---

[1]    Diverticulitis is "inflammation of a diverticulum, especially inflammation related to colonic diverticula, which may undergo perforation with abscess formation." Dorland's Illustrated Medical Dictionary at 558 (32d ed. 2012).

[2]    Hepatomegaly is "enlargement of the liver." Dorland's Illustrated Medical Dictionary at 846.

by Dr. Joshi Swati.  (R. 743-45.)  Thomas' general physical examination was normal.  (R. 744.)  Dr. Swati noted that Thomas' diabetes was uncontrolled and that he was non-compliant with his diet.  (R. 744.)  Dr. Swati advised diet and exercise.  (R. 745.)

### Federation Employment & Guidance Service ("FEGS")

Netanya Bell, a social worker, completed Thomas' FEGS biopsychosocial summary in March 2011.  (R. 616.)  Thomas traveled to the appointment independently by bus.  (R. 626.)  Thomas reported a history of diabetes, hypertension and depression.  (R. 627.)  Thomas claimed he was unable to work due to his medical and mental health concerns.  (Id.)  Thomas reported having used cocaine the day before his appointment and having a history of substance abuse.  (R. 623-24.)  Thomas reported feeling depressed but denied current hallucinations and suicidal ideation.  (R. 624.)  Thomas reported that he was able to wash dishes and clothes, sweep/mop the floor, vacuum, watch TV, make beds, shop for groceries, cook meals, read, socialize, get dressed, bathe, use the toilet and groom himself.  (R. 626-27.)

Dr. Anthony Greenidge examined Thomas on March 4, 2011.  (R. 632.)  The examination was unremarkable except for abnormal mood and affect and dysphoria.  (R. 632-33.)  Dr. Greenidge opined that Thomas could perform light lifting, pulling, and pushing of up to twenty pounds, one to ten times per hour.  (R. 634.)  Dr. Greenidge further opined that Thomas should avoid stressful environments.  (Id.)  Dr. Greenidge did not state any other limitations or accommodations required for employment.  (R. 636.)  Dr. Greenidge did not note any medical conditions impacting employment.  (R. 636-37.)

Dr. Jorge Kirschtein performed a psychiatric evaluation of Thomas on April 28, 2011.  (R. 647-49.)  Thomas claimed that he was depressed.  (R. 648.)  Thomas reported that he had poor concentration, low energy, disturbed sleep, disturbed appetite, anhedonia and feelings of

helplessness, worthlessness and guilt.  (Id.)  Thomas stated that he had last used crack cocaine a

week before the examination and that he would use it daily "'if [he could] get it.'"  (Id.)  Thomas'

mental status exam was largely unremarkable.  (Id.)  Thomas was irritable yet calm, cooperative,

neat and logical.  (Id.)  Dr. Kirschtein diagnosed Thomas with mood and anxiety disorders.  (R.

649.)  Dr. Kirschtein recommended outpatient psychotherapy, antidepressants and ambulatory

substance abuse treatment.  (Id.)

### Consultative Examinations and State Agency Consultations

Dr. Catherine Pelczar-Wissner, a consulting internal medicine physician, examined

Thomas on September 20, 2011.  (R. 717-20.)  The physical examination was largely unremarkable.

(R. 718-19.)  Thomas appeared to be in no acute distress.  (R. 718.)  Thomas "[n]eeded no help

changing for [the] exam or getting on and off [the] exam table."  (Id.)  Thomas was "able to rise

from [his] chair without difficulty."  (Id.)  The "[c]ervical spine show[ed] full flexion, extension,

lateral flexion bilaterally, and full rotary movement bilaterally."  (R. 719.)  The "lumbar spine [had]

flexion/extension 0 through 60 degrees, lateral flexion and rotary movements 0 through 30 degrees."

(Id.)  Thomas had a full range of motion of his shoulders, elbows, forearms, wrists, hips, knees and

ankles bilaterally.  (Id.)  "No sensory deficit [was] noted."  (Id.)  Thomas had strength of 5/5 in his

upper and lower extremities and "[g]rip strength 5/5 bilaterally."  (Id.)  Thomas was diagnosed with

a renal cyst, diabetes, hypertension and lower back pain.  (R. 720.)  Dr. Pelczar-Wissner opined that

Thomas had a "moderate restriction for heavy lifting and carrying."  (Id.)

Consultative psychologist Dr. Arlene Broska examined Thomas on September 20,

2011.  (R. 721-25.)  Thomas traveled to the appointment alone by bus.  (R. 721.)  Thomas stated that

he had completed his GED.  (Id.)  Thomas "last worked as a cook from 2009 to 2010. He stated he

was fired because he cursed out a student."  (Id.)  Thomas reported no psychiatric hospitalizations

and he was not in any outpatient mental health treatment at the time of the examination.  (<u>Id.</u>)

Thomas reported that he "wakes up three times per night and has a poor appetite." (<u>Id.</u>)  Thomas

did not have suicidal or homicidal ideation, intent or plan at the time of the examination.  (<u>Id.</u>)

Thomas did admit to a past suicide attempt in 1999 and to previously stating that he would kill his

sister's children.  (<u>Id.</u>)  Thomas had a history of substance abuse but was not drinking or taking drugs

at this time.  (R. 722.) Thomas had a history of legal problems, including two arrests for armed

robbery and numerous misdemeanor arrests.  (<u>Id.</u>)  Thomas was cooperative in responding to

questions and "his manner of relating, social skills, and overall presentation were adequate." (<u>Id.</u>)

Thomas was able to dress, bathe, and groom himself.  (R. 723.)  Thomas could follow and

understand simple directions and instructions, perform complex tasks independently and maintain

attention and concentration.  (R. 723-24.) Dr. Broska opined that "the results of the examination do

not appear to be consistent with any psychiatric problems that would significantly interfere with

[Thomas'] ability to function on a daily basis."  (R. 724.)

       Dr. E. Kamin, a state agency psychologist, reviewed the medical evidence of record

and completed a psychiatric review technique form on October 4,  2011.  (R. 726-38.)  Dr. Kamin

found that Thomas had an affective disorder and a personality disorder , but that those impairments

were not severe.  (R. 726.) Dr. Kamin opined that Thomas had no functional limitations and the "C"

criteria were not established.  (R. 736-37.)

**<u>ALJ Miller's Decision</u>**

       On January 13, 2013,  ALJ Miller denied Thomas' application for benefits.  (R. 8-21.)

ALJ Miller applied the appropriate five step-legal analysis.  (<u>See</u> R. 12-13.)  At step one, ALJ Miller

found that Thomas had "not engaged in substantial gainful activity since December 23, 2010, the

alleged onset date."  (R. 13.)

At step two, ALJ Miller found that Thomas had "the following severe impairments: diabetes mellitus, hypertension, renal cysts, and chronic low back pain." (Id.) Thomas "also alleged cholesterol, shortness of breath, kidney problem, vision problems, problems with feet, [and] pain in the left arm." (Id.) ALJ Miller found that Thomas' "symptoms for the aforementioned impairments did not last at a severe level for a continuous period of 12 months and/or did not cause more than a minimal effect on his functioning and are thus not severe impairments." (R. 14.) Furthermore, Thomas' "medically determinable mental impairments of depression and antisocial traits, considered singly and in combination, do not cause more than minimal limitation in [his] ability to perform basic mental work activities and are therefore nonsevere." (Id., record citation omitted.)

At step three, ALJ Miller found that Thomas did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. 16-17.) "[U]nder listing 1.04, the claimant must have a disorder of the spine resulting in compromise of a nerve root with motor loss accompanied by sensory or reflex loss and positive straight-leg raising test, lumbar spinal stenosis resulting in pseudoclaudication, or spinal arachnoiditis." (R. 17.) ALJ Miller noted that Thomas "had no sensory deficits, 5/5 strength in all his upper and lower extremities, and 5/5 grip strength bilaterally, and negative straight leg raising test." (Id.) Accordingly, ALJ Miller found that Thomas' "symptoms associated with chronic low back pain do not meet or medically equal the severity set forth in listing 1.00." (R. 17.) ALJ Miller further found that Thomas' diabetes symptoms did not meet or medically equal listing 9.00 as "[t]here is no indication that [Thomas] has hyperglycemia and diabetic ketoacidosis." (R. 17.) Furthermore, "the evidence does not show that [Thomas'] renal cysts and hypertension symptoms are of listing level severity." (Id.)

In determining Thomas's credibility, ALJ Miller found that

> the objective medical evidence does not support [Thomas'] allegations that his symptoms hinder his ability to work, which suggests that his condition is not as severe as alleged. Although [Thomas] underwent treatment for his symptoms, the evidence does not reveal a disabling condition. [For example,] there is minimal treatment evidence in the record after [Thomas'] alleged onset date of December 23, 2010, which suggests that [Thomas] does not feel that his condition is severe enough to seek out treatment . . . . [T]he medical records indicate that [Thomas'] diabetes symptoms were uncontrolled due to poor compliance by [Thomas]. Medical professionals also noted that [Thomas] did not report any pain, and physical examinations revealed no musculoskeletal or neurological findings.

(R. 18, record citations omitted.)

ALJ Miller found that Thomas remained "quite active," further diminishing his credibility. (Id.) Thomas "reported having the ability to dress, bathe, and groom himself, and that [he] uses public transportation independently." (R. 18-19.) Thomas also stated that he cooks his own meals daily. (R. 19.) Thomas reported that he goes to the park every day, shops for food and attends church services. (Id.) Thomas "further asserted that he can follow written and spoken instructions, and that he can complete tasks that he starts." (Id.) Thomas "additionally stated that he [did] not have any problems paying attention, and that he [did] not have any problems remembering things." (Id.) Thomas admitted "that he [had] looked for work since his alleged onset date, and that he did perform various 'odds and ends' for people in the building." (Id.) Thomas "testified that the state of the economy factored into his inability to secure full-time work." (Id.) According to ALJ Miller, "this evidence shows that [Thomas] believes that he does have the ability to work." (Id.)

ALJ Miller referred to Dr. Pelczar-Wissner's consultative examination, which was largely unremarkable. (Id.) ALJ Miller noted that Dr. Pelczar-Wissner reported that Thomas appeared to be in no acute distress. (Id.) Thomas needed no help changing for the exam or getting

12

on and off the exam table and was able to rise from his chair without difficulty.  (Id.)  According to Dr. Pelczar-Wissner, Thomas had a negative straight leg raising test.  (Id.) Thomas had a full range of motion of his shoulders, elbows, forearms, wrists, hips, knees and ankles bilaterally.  (Id.) Thomas had a strength of 5/5 in his upper and lower extremities and grip strength was 5/5 bilaterally.  (Id.)  Dr. Pelczar-Wissner opined that Thomas had a "moderate restriction for heavy lifting and carrying."  (Id.)  ALJ Miller gave "significant weight to Dr. Pelczar-Wissner's opinion because she [based] her opinion upon an in-person examination of [Thomas], and her opinion [was] consistent with her findings" as well as "with [Thomas'] activities, that include attending to his personal care needs, cooking, going shopping, using public transportation, attending church services, and going to the park on a daily basis."  (R. 19-20.)

ALJ Miller found that Thomas had "the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)."  (R. 17.)

> [Thomas] has the ability to occasionally lift and/or carry up to 20 pounds, and frequently lift and/or carry up to 10 pounds. [Thomas] also has the ability to stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday and sit (with normal breaks) for a total of about 6 hours in an 8-hour workday. [Thomas] further has the ability to frequently climb ramps or stairs, but he should never climb ladders, ropes, or scaffolds. [Thomas] should additionally avoid concentrated exposure to fumes, odors, gases, and poor ventilation.

(R. 17.)  ALJ Miller stated that

> the above residual functional capacity assessment is supported by objective medical evidence of the record and the objective medical opinions cited above.  Moreover, [Thomas'] reported activities, as outlined above, support the conclusion that [Thomas] is capable of performing light level work activities.

(R. 20.)

At step four, ALJ Miller found that Thomas was "capable of performing past relevant work as a chef" as "this work does not require the performance of work-related activities precluded

by [Thomas'] residual functional capacity." (Id.)  Accordingly, ALJ Miller concluded that Thomas

was not under a disability.  (Id.)

## ANALYSIS

## I.   THE APPLICABLE LAW

### A.   Definition Of Disability

A person is considered disabled for Social Security benefits purposes when he is

unable "to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or can

be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A),

1382c(a)(3)(A); see, e.g., Barnhart v. Thomas, 540 U.S. 20, 23, 124 S. Ct. 376, 379 (2003); Barnhart

v. Walton, 535 U.S. 212, 214, 122 S. Ct. 1265, 1268 (2002); Impala v. Astrue, 477 F. App'x 856,

857 (2d Cir. 2012).[3/]

> An individual shall be determined to be under a disability only if [the combined
> effects of] his physical or mental impairment or impairments are of such severity that
> he is not only unable to do his previous work but cannot, considering his age,
> education, and work experience, engage in any other kind of substantial gainful work
> which exists in the national economy, regardless of whether such work exists in the
> immediate area in which he lives, or whether a specific job vacancy exists for him,
> or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); see, e.g., Barnhart v. Thomas, 540 U.S. at 23, 124 S.

---

[3/]   See also, e.g., Salmini v. Comm'r of Soc. Sec., 371 F. App'x 109, 111 (2d Cir. 2010);
Betances v. Comm'r of Soc. Sec., 206 F. App'x 25, 26 (2d Cir. 2006); Surgeon v. Comm'r
of Soc. Sec., 190 F. App'x 37, 39 (2d Cir. 2006); Rodriguez v. Barnhart, 163 F. App'x 15,
16 (2d Cir. 2005); Malone v. Barnhart, 132 F. App'x 940, 941 (2d Cir. 2005); Butts v.
Barnhart, 388 F.3d 377, 383 (2d Cir. 2004), amended on other grounds, 416 F.3d 101 (2d
Cir. 2005); Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002); Draegert v. Barnhart, 311
F.3d 468, 472 (2d Cir. 2002); Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000); Brown v.
Apfel, 174 F.3d 59, 62 (2d Cir. 1999); Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999);
Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); Balsamo v. Chater, 142 F.3d 75, 79 (2d
Cir. 1998); Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996).

Ct. at 379; Barnhart v. Walton, 535 U.S. at 218, 122 S. Ct. at 1270.[4]

In determining whether an individual is disabled for disability benefit purposes, the Commissioner must consider: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam).[5]

**B.    Standard Of Review**

A court's review of the Commissioner's final decision is limited to determining whether there is "substantial evidence" in the record as a whole to support such determination. E.g., 42 U.S.C. § 405(g); Giunta v. Comm'r of Soc. Sec., 440 F. App'x 53, 53 (2d Cir. 2011).[6] "'Thus, the role of the district court is quite limited and substantial deference is to be afforded the Commissioner's decision.'" Morris v. Barnhart, 02 Civ. 0377, 2002 WL 1733804 at *4 (S.D.N.Y.

---

[4]   See also, e.g., Salmini v. Comm'r of Soc. Sec., 371 F. App'x at 111; Betances v. Comm'r of Soc. Sec., 206 F. App'x at 26; Butts v. Barnhart, 388 F.3d at 383; Draegert v. Barnhart, 311 F.3d at 472; Shaw v. Chater, 221 F.3d at 131-32; Rosa v. Callahan, 168 F.3d at 77; Balsamo v. Chater, 142 F.3d at 79.

[5]   See, e.g., Brunson v. Callahan, No. 98-6229, 199 F.3d 1321 (table), 1999 WL 1012761 at *1 (2d Cir. Oct. 14, 1999); Brown v. Apfel, 174 F.3d at 62.

[6]   See also, e.g., Prince v. Astrue, 514 F. App'x 18, 19 (2d Cir. 2013); Salmini v. Comm'r of Soc. Sec., 371 F. App'x 109, 111 (2d Cir. 2010); Acierno v. Barnhart, 475 F.3d 77, 80-81 (2d Cir.), cert. denied, 551 U.S. 1132, 127 S. Ct. 2981 (2007); Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004); Jasinski v. Barnhart, 341 F.3d 182, 184 (2d Cir. 2003); Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002); Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000); Brown v. Apfel, 174 F.3d 59, 61 (2d Cir. 1999); Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991); Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam); Dumas v. Schweiker, 712 F.2d 1545, 1550 (2d Cir. 1983).

July 26, 2002) (Peck, M.J.).[7]

The Supreme Court has defined "substantial evidence" as "'more than a mere scintilla [and] such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971); accord, e.g., Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013); Rosa v. Callahan, 168 F.3d at 77; Tejada v. Apfel, 167 F.3d at 773-74.[8] "[F]actual issues need not have been resolved by the [Commissioner] in accordance with what we conceive to be the preponderance of the evidence." Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982), cert. denied, 459 U.S. 1212, 103 S. Ct. 1207 (1983).  The Court must be careful not to "'substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review.'" Jones v. Sullivan, 949 F.2d 57, 59 (2d Cir. 1991).[9]

The Court, however, will not defer to the Commissioner's determination if it is "'the product of legal error.'" E.g., Duvergel v. Apfel, 99 Civ. 4614, 2000 WL 328593 at *7 (S.D.N.Y. Mar. 29, 2000) (Peck, M.J.); see also, e.g., Douglass v. Astrue, 496 F. App'x 154, 156 (2d Cir. 2012); Butts v. Barnhart, 388 F.3d 377, 384 (2d Cir. 2004), amended on other grounds, 416 F.3d 101 (2d Cir. 2005); Tejada v. Apfel, 167 F.3d at 773 (citing cases).

---

[7]     See also, e.g., Florencio v. Apfel, 98 Civ. 7248, 1999 WL 1129067 at *5 (S.D.N.Y. Dec. 9, 1999) (Chin, D.J.) ("The Commissioner's decision is to be afforded considerable deference; the reviewing court should not substitute its own judgment for that of the Commissioner, even if it might justifiably have reached a different result upon a de novo review." (quotations & alterations omitted)).

[8]     See also, e.g., Halloran v. Barnhart, 362 F.3d at 31; Jasinski v. Barnhart, 341 F.3d at 184; Veino v. Barnhart, 312 F.3d at 586; Shaw v. Chater, 221 F.3d at 131; Brown v. Apfel, 174 F.3d at 61; Perez v. Chater, 77 F.3d at 46.

[9]     See also, e.g., Campbell v. Astrue, 465 F. App'x 4, 6 (2d Cir. 2012); Veino v. Barnhart, 312 F.3d at 586.

The Commissioner's regulations set forth a five-step sequence to be used in evaluating disability claims.  20 C.F.R. §§ 404.1520, 416.920; see, e.g., Barnhart v. Thomas, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-80 (2003); Bowen v. Yuckert, 482 U.S. 137, 140, 107 S. Ct. 2287, 2291 (1987).  The Supreme Court has articulated the five steps as follows:

> Acting pursuant to its statutory rulemaking authority, the agency has promulgated regulations establishing a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or nondisability can be made, the SSA will not review the claim further.  [1] At the first step, the agency will find nondisability unless the claimant shows that he is not working at a "substantial gainful activity."  [2] At step two, the SSA will find nondisability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  [3] At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies.  [4] If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled.  [5] If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy.

Barnhart v. Thomas, 540 U.S. at 24-25, 124 S. Ct. at 379-80 (fns. & citations omitted).[10/]

The claimant bears the burden of proof as to the first four steps; if the claimant meets the burden of proving that he cannot return to his past work, thereby establishing a prima facie case, the Commissioner then has the burden of proving the last step, that there is other work the claimant can perform considering not only his medical capacity but also his age, education and training.  See,

---

[10/]     Accord, e.g., Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012); Rosa v. Callahan, 168 F.3d at 77; Tejada v. Apfel, 167 F.3d at 774; see also, e.g., Jasinski v. Barnhart, 341 F.3d at 183-84; Shaw v. Chater, 221 F.3d at 132; Brown v. Apfel, 174 F.3d at 62; Balsamo v. Chater, 142 F.3d 75, 79-80 (2d Cir. 1998); Perez v. Chater, 77 F.3d at 46; Dixon v. Shalala, 54 F.3d 1019, 1022 (2d Cir. 1995); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).

e.g., Barnhart v. Thomas, 540 U.S. at 25, 124 S. Ct. at 379-80.[11/]

### C.     The Treating Physician Rule

The "treating physician's rule" is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion. Specifically, the Commissioner's regulations provide that:

> If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

20 C.F.R. § 404.1527(c)(2); see, e.g., Rugless v. Comm'r of Soc. Sec., 548 F. App'x 698, 699-700 (2d Cir. 2013); Meadors v. Astrue, 370 F. App'x 179, 182 (2d Cir. 2010); Colling v. Barnhart, 254 F. App'x 87, 89 (2d Cir. 2007); Lamorey v. Barnhart, 158 F. App'x 361, 362 (2d Cir. 2006).

Further, the regulations specify that when controlling weight is not given a treating physician's opinion (because it is not "well-supported" by other medical evidence), the ALJ must consider the following factors in determining the weight to be given such an opinion: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the evidence that supports the treating physician's report; (4) how consistent the treating physician's opinion is with the record as a whole; (5) the specialization of the physician in contrast to the condition being treated; and (6) any other factors which may be significant.  20 C.F.R. § 404.1527(c)(2)-(6); see, e.g., Cichocki v. Astrue, 534 F. App'x 71, 74 (2d

---

[11/]     See also, e.g., Selian v. Astrue, 708 F.3d at 418; Betances v. Comm'r of Soc. Sec., 206 F. App'x 25, 26 (2d Cir. 2006); Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003); Rosa v. Callahan, 168 F.3d at 80; Perez v. Chater, 77 F.3d at 46; Berry v. Schweiker, 675 F.2d at 467.

Cir. 2013); <u>Gunter</u> v. <u>Comm'r of Soc. Sec.</u>, 361 F. App'x 197, 197 (2d Cir. 2010).[12]

When a treating physician provides a favorable report, the claimant "is entitled to an express recognition from the [ALJ or] Appeals Council of the existence of [the treating physician's] favorable . . . report and, if the [ALJ or] Council does not credit the findings of that report, to an explanation of why it does not." <u>Snell</u> v. <u>Apfel</u>, 177 F.3d 128, 134 (2d Cir. 1999); <u>see</u>, <u>e.g.</u>, <u>Cichocki</u> v. <u>Astrue</u>, 534 F. App'x at 75; <u>Zabala</u> v. <u>Astrue</u>, 595 F.3d 402, 409 (2d Cir. 2010) (ALJ's failure to consider favorable treating physician evidence ordinarily requires remand pursuant to <u>Snell</u> but does not require remand where the report was "essentially duplicative of evidence considered by the ALJ"); <u>Ferraris</u> v. <u>Heckler</u>, 728 F.2d 582, 587 (2d Cir. 1984) ("We of course do not suggest that every conflict in a record be reconciled by the ALJ or the Secretary, but we do believe that the crucial factors in any determination must be set forth with sufficient specificity to enable [reviewing courts] to decide whether the determination is supported by substantial evidence." (citations omitted)); <u>Ramos</u> v. <u>Barnhart</u>, 02 Civ. 3127, 2003 WL 21032012 at *7, *9 (S.D.N.Y. May 6, 2003) (The ALJ's "'failure to mention such [treating physician report] evidence and set forth the reasons for his conclusions with sufficient specificity hinders [this Court's] ability . . . to decide whether his determination is supported by substantial evidence.'").

The Commissioner's "treating physician" regulations were approved by the Second Circuit in <u>Schisler</u> v. <u>Sullivan</u>, 3 F.3d 563, 568 (2d Cir. 1993).

---

[12] See also, <u>e.g.</u>, <u>Foxman</u> v. <u>Barnhart</u>, 157 F. App'x 344, 346-47 (2d Cir. 2005); <u>Halloran</u> v. <u>Barnhart</u>, 362 F.3d 28, 32 (2d Cir. 2004); <u>Shaw</u> v. <u>Chater</u>, 221 F.3d 126, 134 (2d Cir. 2000); <u>Clark</u> v. <u>Comm'r of Soc. Sec.</u>, 143 F.3d 115, 118 (2d Cir. 1998); <u>Schaal</u> v. <u>Apfel</u>, 134 F.3d 496, 503 (2d Cir. 1998).

II.      **APPLICATION OF THE FIVE STEP SEQUENCE**

A.      **Thomas Was Not Engaged In Substantial Gainful Activity**

The first inquiry is whether Thomas was engaged in substantial gainful activity after his application for DIB and SSI benefits.  "Substantial gainful activity" is defined as work that involves "doing significant and productive physical or mental duties" and "[i]s done (or intended) for pay or profit." 20 C.F.R. § 404.1510.  Since ALJ Miller's conclusion that Thomas did not engage in substantial gainful activity during the applicable time period (see page 9 above) benefits Thomas, the Court proceeds to the second step of the five-step analysis.

B.      **Thomas Demonstrated "Severe" Impairments That Significantly Limited His Ability To Do Basic Work Activities**

The second step of the analysis is to determine whether Thomas proved that he had a severe impairment or combination of impairments that "significantly limit[ed his] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a).  The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. § 404.1521(b).  "Basic work activities" include:

> walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling . . . seeing, hearing, and speaking . . . [u]nderstanding, carrying out, and remembering simple instructions . . . [u]se of judgment . . . [r]esponding appropriately to supervision, co-workers and usual work situations . . . [d]ealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b)(1)-(6).  The Second Circuit has warned that the step two analysis may not do more than "screen out de minimis claims." Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995). "[T]he 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition 'severe.'" McDowell v. Colvin, No. 11-CV-1132, 2013 WL 1337152 at *6 (N.D.N.Y. Mar. 11, 2013), report

& rec. adopted, 2013 WL 1337131 (N.D.N.Y. Mar. 29, 2013).[13/]

"A finding that a condition is not severe means that the plaintiff is not disabled, and the Administrative Law Judge's inquiry stops at the second level of the five-step sequential evaluation process." Rosario v. Apfel, No. 97 CV 5759, 1999 WL 294727 at *5 (E.D.N.Y. Mar. 19, 1999). On the other hand, if the disability claim rises above the de minimis level, then the further analysis of step three and beyond must be undertaken. See, e.g., Dixon v. Shalala, 54 F.3d at 1030.

"A finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" Rosario v. Apfel, 1999 WL 294727 at *5 (quoting Bowen v. Yuckert, 482 U.S. 137, 154 n.12, 107 S. Ct. 2287, 2298 n.12 (1987)).

ALJ Miller determined that the medical evidence indicated that Thomas had the severe impairments of diabetes mellitus, hypertension, renal cysts and chronic low back pain. (See page 10 above.) ALJ Miller's finding regarding the severity of Thomas' impairments benefits Thomas and the Court therefore proceeds to the third step of the five-part analysis.

---

[13/] Accord, e.g., Whiting v. Astrue, No. Civ. A. No. 12-274, 2013 WL 427171 at *2 (N.D.N.Y. Jan. 15, 2013) ("'The mere presence of a disease or impairment alone . . . is insufficient to establish disability; instead, it is the impact of the disease, and in particular any limitations it may impose upon the claimant's ability to perform basic work functions, that is pivotal to the disability inquiry.'"), report & rec. adopted, 2013 WL 427166 (N.D.N.Y. Feb. 4, 2013); Lohnas v. Astrue, No. 09-CV-685, 2011 WL 1260109 at *3 (W.D.N.Y. Mar. 31, 2011), aff'd, 510 F. App'x 13 (2d Cir. 2013); Hahn v. Astrue, 08 Civ. 4261, 2009 WL 1490775 at *7 (S.D.N.Y. May 27, 2009) (Lynch, D.J.) ("[I]t is not sufficient that a plaintiff 'establish[] the mere presence of a disease or impairment.' Rather, 'the disease or impairment must result in severe functional limitations that prevent the claimant from engaging in any substantial gainful activity.'" (citation omitted)); Rodriguez v. Califano, 431 F. Supp. 421, 423 (S.D.N.Y. 1977) ("The mere presence of a disease or impairment is not disabling within the meaning of the Social Security Act.").

**C.**     **Thomas Did Not Have A Disability Listed In Appendix 1 Of The Regulations**

The third step of the five-step test requires a determination of whether Thomas had an impairment listed in Appendix 1 of the Regulations.  20 C.F.R., Pt. 404, Subpt. P, App. 1.  "These are impairments acknowledged by the [Commissioner] to be of sufficient severity to preclude gainful employment.  If a claimant's condition meets or equals the 'listed' impairments, he or she is conclusively presumed to be disabled and entitled to benefits."  Dixon v. Shalala, 54 F.3d 1019, 1022 (2d Cir. 1995).

ALJ Miller found that neither Thomas' back pain nor diabetes meet or equal the listed impairments in Appendix 1 of the regulations.  (See page 10 above.)

For a disorder of the spine to be considered severe it must result "in compromise of a nerve root (including the cauda equina) or the spinal cord" with:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R.  Pt. 404, Subpt. P, App. 1, § 1.04.

> Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that

limits the functioning of both upper extremities.

20 C.F.R.  Pt. 404, Subpt. P, App. 1, § 1.00(B)(2)(b)(1).

> To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living.  They must have the ability to travel without companion assistance to and from a place of employment or school.

20 C.F.R., Pt. 404, Subpt. P, App. 1, § 1.00(B)(2)(b)(2).

ALJ Miller's finding that Thomas' lumbar spine displacement did not meet or equal an impairment listed in Appendix 1 of the regulations was based on Dr. Pelczar-Wissner's opinion that Thomas "had no sensory deficits, 5/5 strength in all his upper and lower extremities, and 5/5 grip strength bilaterally, and negative straight leg raising test."  (R. 17.)  Additionally, Thomas reported that he walks to the park daily, goes to church on Sundays, goes grocery shopping twice a month, and travels independently.  (See page 4 above.)  This evidence indicates that Thomas is able to ambulate effectively.  Thomas' back pain thus does not satisfy the listings in 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 1.00, 1.04.   Accordingly, ALJ Miller's finding was supported by substantial evidence.  See, e.g., Daniel v. Astrue, 11 Civ. 2636, 2011 WL 5922887 at *13 (S.D.N.Y. Nov. 28, 2011) (Peck, M.J.) ("[B]ecause [the claimant] did not prove the he could not 'ambulate effectively,' i.e., that he had 'an extreme limitation of the ability to walk,' [the ALJ's determination that [the claimaint's] back pain does not satisfy the Listings is supported by substantial evidence." (citation omitted)), report & rec. adopted, 2012 WL 1849233 (S.D.N.Y. May 21, 2012); Paulino v. Astrue, 08 Civ. 2813, 2010 WL 3001752 at *17 (S.D.N.Y. July 30, 2010) (Peck, M.J.).

For diabetes mellitus to be considered severe under Appendix 1 of the regulations it must be accompanied by hyperglycemia, diabetic ketoacidosis, chronic hyperglycemia or hypoglycemia.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 9.00(B)(5).  There is no medical evidence

indicating that Thomas' diabetes is accompanied by any of these conditions.  (See pages 6-9 above.)
ALJ Miller was entitled to rely on the absence of evidence.  See, e.g., Salvaggio v. Apfel, 23 F.
App'x 49, 51 (2d Cir. 2001) (lack of medical evidence supports the ALJ's determination that plaintiff
was not disabled); O'Connor v. Shalala, No. 96-6215, 111 F.3d 123 (table), 1997 WL 165381 at *1
(2d Cir. Mar. 31, 1997) ("the Commissioner is also entitled to rely on the absence of
contemporaneous evidence of the disability"); Diaz v. Shalala, 59 F.3d 307, 315 (2d Cir. 1995);
Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983) (Commissioner is "entitled to rely not only
on what the [medical] record says, but also on what it does not say");  Soto v. Colvin, 14 Civ. 7440,
2015 WL 1726541 at *19 (S.D.N.Y. Apr. 14, 2015) (Peck, M.J.) (The ALJ "was entitled to rely on
that absence of evidence"); Johnston v. Colvin, 13 Civ. 2710, 2015 WL 657774 at *5 n.3 (S.D.N.Y.
Feb. 13, 2015) ("As the Second Circuit has noted, the absence of evidence from the claimed period
of disability may itself be considered substantial evidence."), report & rec. adopted, 2015 WL
1266895 (S.D.N.Y. Mar. 18, 2015).[14]  Thus, ALJ Miller's conclusion that Thomas' diabetes does not
meet or equal the listed severity is supported by substantial evidence.

---

[14]     See also, e.g., Marte v. Colvin, 14 Civ. 0832, 2014 WL 5088078 at *18 (S.D.N.Y. Oct. 9,
2014) (Peck, M.J.); Rodriguez v. Barnhart, 04 Civ. 4514, 2005 WL 643190 at *12 (S.D.N.Y.
Mar. 21, 2005) (Peck, M.J.); Catrain v. Barnhart, 325 F. Supp. 2d 183, 192 (E.D.N.Y. 2004)
("[T]he ALJ is entitled to rely on the absence of opinions. . . ."); Jiang v. Barnhart, 03 Civ.
0077, 2003 WL 21526937 at *13 (S.D.N.Y. July 8, 2003) (Peck, M.J.), report & rec.
adopted, 2003 WL 21755932 (S.D.N.Y. July 30, 2003); De Roman v. Barnhart, 03 Civ.
0075, 2003 WL 21511160 at *13 (S.D.N.Y. July 2, 2003) (Peck, M.J.); Alvarez v. Barnhart,
02 Civ. 3121, 2002 WL 31663570 at *10 (S.D.N.Y. Nov. 26, 2002) (Peck, M.J.), report &
rec. adopted, 2003 WL 272063 (S.D.N.Y. Jan. 16, 2003); De La Cruz v. Chater, 937 F. Supp.
194, 197 (E.D.N.Y. 1996).

D.      **Residual Functional Capacity and Credibility Determinations**

1.      **Credibility Determination**

Because subjective symptoms like pain only lessen a claimant's residual functional capacity ("RFC") where the symptoms "'can reasonably be accepted as consistent with the objective medical evidence and other evidence,' the ALJ is not required to accept allegations regarding the extent of symptoms that are inconsistent with the claimant's statements or similar evidence." Moulding v. Astrue, 08 Civ. 9824, 2009 WL 3241397 at *7 (S.D.N.Y. Oct. 8, 2009) (citation & emphasis omitted); see, e.g., Campbell v. Astrue, 465 F. App'x 4, 7 (2d Cir. 2012) ("As for the ALJ's credibility determination, while an ALJ 'is required to take the claimant's reports of pain and other limitations into account,' he or she is 'not require[d] to accept the claimant's subjective complaints without question.' Rather, the ALJ 'may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record.'" (citations omitted)); Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) ("When determining a claimant's RFC, the ALJ is required to take the claimant's reports of pain and other limitations into account, but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." (citations omitted)); Brown v. Comm'r of Soc. Sec., 310 F. App'x 450, 451 (2d Cir. 2009) ("'Where there is conflicting evidence about a claimant's pain, the ALJ must make credibility findings.'").[15/]   In

---

[15/]     See also, e.g., Rivers v. Astrue, 280 F. App'x 20, 22 (2d Cir. 2008) (same); Thompson v. Barnhart, 75 F. App'x 842, 845 (2d Cir. 2003) (ALJ properly found that plaintiff's "description of her symptoms was at odds with her treatment history, her medication regime, and her daily routine"); Snell v. Apfel, 177 F.3d 128, 135 (2d Cir. 1999); Norman v. Astrue, 912 F. Supp. 2d 33, 85 (S.D.N.Y. 2012) ("It is 'within the discretion of the [Commissioner] to evaluate the credibility of plaintiff's complaints and render an independent judgment in light of the medical findings and other evidence regarding the true extent of such
(continued...)

addition, "courts must show special deference to an ALJ's credibility determinations because the ALJ had the opportunity to observe plaintiff's demeanor while [the plaintiff was] testifying." Marquez v. Colvin, 12 Civ. 6819, 2013 WL 5568718 at *7 (S.D.N.Y. Oct. 9, 2013).[16/]

ALJ Miller found that not all of Thomas' allegations regarding his symptoms were fully credible.  (R. 18.)  ALJ Miller stated that "the objective medical evidence does not support [Thomas'] allegations that his symptoms hinder his ability to work, which suggests that his condition is not as severe as alleged."  (See page 11 above.)  Additionally, ALJ Miller found Thomas' own testimony indicating that he remained quite active further diminished his credibility.  (See page 11 above.)

When ruling that a claimant is not entirely credible, the ALJ must provide "specific reasons for the finding on credibility, supported by the evidence in the case record."  SSR 96-7p,

---

[15/]    (...continued)
symptomatology.'"); Astolos v. Astrue, No. 06-CV-678, 2009 WL 3333234 at *12 (W.D.N.Y. Oct. 14, 2009) (ALJ properly determined that plaintiff's subjective pain complaints were not supported by the medical record); Speruggia v. Astrue, No. 05-CV-3532, 2008 WL 818004 at *11 (E.D.N.Y. Mar. 26,  2008) ("The ALJ 'does not have to accept plaintiff's subjective testimony about her symptoms without question' and should determine a plaintiff's credibility 'in light of all the evidence.'"); Soto v. Barnhart, 01 Civ. 7905, 2002 WL 31729500 at *6 (S.D.N.Y. Dec. 4, 2002) ("The ALJ has the capacity and the discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of pain alleged by the claimant."); Brandon v. Bowen, 666 F. Supp. 604, 608 (S.D.N.Y. 1987) (same).

[16/]    Accord, e.g., Campbell v. Astrue, 465 F. App'x at 7 ("[W]e have long held that '[i]t is the function of the [Commissioner], not ourselves, . . . to appraise the credibility of witnesses, including the claimant.'"); Nunez v. Astrue, 11 Civ. 8711, 2013 WL 3753421 at *7 (S.D.N.Y. July 17, 2013); Guzman v. Astrue, 09 Civ. 3928, 2011 WL 666194 at *7 (S.D.N.Y. Feb. 4, 2011); Ruiz v. Barnhart, 03 Civ. 10128, 2006 WL 1273832 at *7 (S.D.N.Y. May 10, 2006); Gernavage v. Shalala, 882 F. Supp. 1413, 1419 & n.6 (S.D.N.Y. 1995); Mejias v. Soc. Sec. Admin., 445 F. Supp. 741, 744 (S.D.N.Y. 1978) (Weinfeld, D.J.); Wrennick v. Sec'y of Health, Educ. & Welfare, 441 F. Supp. 482, 485 (S.D.N.Y. 1977) (Weinfeld D.J.).

1996 WL 374186 at *4 (July 2, 1996).  The regulations set out a two-step process for assessing a

claimant's statements about pain and other limitations:

> At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. . . . If the claimant does suffer from such an impairment, at the second step, the ALJ must consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record.  The ALJ must consider statements the claimant or others make about his impairments, his restrictions, his daily activities, his efforts to work, or any other relevant statements he makes to medical sources during the course of examination or treatment, or to the agency during interviews, on applications, in letters, and in testimony in its administrative proceedings.

Genier v. Astrue, 606 F.3d at 49 (quotations, citation & brackets omitted).[17]

ALJ Miller properly applied this two-step process to Thomas' case.  (R. 17-19.)

ALJ Miller considered the objective medical evidence.  ALJ Miller gave "significant

weight to Dr. Pelczar-Wissner's opinion because she base[d] her opinion upon an in-person

examination of [Thomas], and her opinion [was] consistent with her findings" as well as with

Thomas' "activities, that include attending to his personal care needs, cooking, going shopping, using

public transportation, attending church services, and going to the park on a daily basis." (See page

12 above.)  ALJ Miller referenced Dr. Pelczar-Wissner's finding that Thomas only had a "moderate

restriction for heavy lifting and carrying."  (See page 12 above.)   ALJ Miller noted that Thomas'

doctors noted that his diabetes was "uncontrolled due to [Thomas'] poor compliance."  (R. 18.)

Thomas' doctors found that Thomas reported no pain or only mild pain.  (Id.)  ALJ Miller stated that

the medical evidence "suggests that [Thomas'] condition is not as severe as alleged, which

---

[17]    Accord, e.g., Cichocki v. Astrue, 534 F. App'x 71, 75-76 (2d Cir. 2013); Campbell v. Astrue, 465 F. App'x at 7; Meadors v. Astrue, 370 F. App'x 179, 183 (2d Cir. 2010); Taylor v. Barnhart, 83 F. App'x 347, 350-51 (2d Cir. 2003); 20 C.F.R. § 416.945(a)(1), (3); SSR 96-7p, 1996 WL 374186 at *2.

diminishes [Thomas'] credibility concerning the intensity and the purported disabling effect of his symptoms." (Id.)

ALJ Miller also considered Thomas' testimony, finding that Thomas' statements about his condition and daily activities contradicted his claim of disability. (See page 11 above.) Thomas admitted that he has no problem with personal care. (See page 4 above.) Thomas prepares his own food daily, and there has been no change in his cooking habits since the onset of his conditions. (See page 4 above.) Thomas goes outside every day, walks, rides in cars and uses public transportation, and does not need aids to walk. (See page 4 above.) Thomas shops for food, goes to the park every day and goes to church on Sundays. (See page 4 above.) ALJ Miller correctly concluded that "the aforementioned activities show that [Thomas] is quite active. . . ." (R. 19.) ALJ Miller also found Thomas not credible because the economy, rather than his medical condition, is the explanation for his not working. (Id.) ALJ Miller stated:

> Additionally, [Thomas'] entire claim is premised upon the proposition that his symptoms and limitations hinder his ability to work. Nonetheless, [Thomas'] records and testimony reveal that he collected unemployment benefits after his alleged onset date. In connection, [Thomas] verified to the State that he was actively looking for work during the time that he was collecting unemployment. [Thomas] admitted at the hearing that he has looked for work since his alleged onset date, and that he did perform various "odds and ends" for people in his building. In fact, [Thomas] testified that the state of the economy factored into his inability to secure full-time work. This evidence shows that [Thomas] believes that he does have the ability to work, which undermines the premise of his disability application.

(Id., record citations omitted.)

Thus, ALJ Miller met his burden in finding Thomas' claims not entirely credible because the objective medical evidence and Thomas' own testimony failed to support his claims of disability based primarily on his diabetes and lumbar displacement. See, e.g., Stanton v. Astrue, 370 F. App'x 231, 234 (2d Cir. 2010) (the court will not "second-guess the credibility finding . . . where

the ALJ identified specific record-based reasons for his ruling"); <u>Rutkowski</u> v. <u>Astrue</u>, 368 F. App'x 226, 230 (2d Cir. 2010) (ALJ adequately supported credibility finding when he noted that "substantial evidence existed showing that [plaintiff] was relatively 'mobile and functional,' and that [plaintiff's] allegations of disability contradicted the broader evidence"); <u>Duran</u> v. <u>Colvin</u>, 14 Civ. 4681, 2015 WL 4476165 at *13 (S.D.N.Y. July 22, 2015) (Peck, M.J.) (the ALJ "met his burden in finding [plaintiff] not entirely credible because the objective medical evidence and her stated independence in activities of daily living failed to support her claims of disability"); <u>Kessler</u> v. <u>Colvin</u>, 13 Civ. 1760, 2014 WL 4651895 at *14 (S.D.N.Y. Sept. 17, 2014) (claimant's "subjective complaints of pain lacked the necessary objective medical support, and therefore were not entitled to any special weight.   Accordingly, the ALJ's adverse credibility determination was not erroneous."); <u>Givens</u> v. <u>Colvin</u>, 13 Civ. 4763, 2014 WL 1394965 at *10-11 (S.D.N.Y. Apr. 11, 2014) (Peck, M.J.) (ALJ properly found claimant's disability claims not entirely credible where claimant "admitted that he was capable of performing many day-to-day activities, such as reading, watching television, caring for his personal needs, using public transportation, and going to church"); <u>Hilliard</u> v. <u>Colvin</u>, 13 Civ. 1942, 2013 WL 5863546 at *15 (S.D.N.Y. Oct. 21, 2013) (Peck, M.J.) (the ALJ "met his burden in finding [plaintiff's] claims not entirely credible because she remains functional in terms of activities of daily living and the objective medical evidence fails to support her claims of total disability based on pain" (citations omitted)); <u>Ashby</u> v. <u>Astrue</u>, 11 Civ. 2010, 2012 WL 2477595 at *15 (S.D.N.Y. Mar. 27, 2012) ("in making his credibility assessment, the ALJ appropriately considered Plaintiff's ability to engage in certain daily activities as one factor, among others suggested by the regulations"), <u>report & rec. adopted</u>, 2012 WL 2367034 (S.D.N.Y. June 20, 2012).

## 2. Residual Functional Capacity Determination

ALJ Miller found that Thomas had "the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)." (<u>See</u> page 12 above.) ALJ Miller found that

> [Thomas] has the ability to occasionally lift and/or carry up to 20 pounds, and frequently lift and/or carry up to 10 pounds. [Thomas] also has the ability to stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday and sit (with normal breaks) for a total of about 6 hours in an 8-hour workday. [Thomas] further has the ability to frequently climb ramps or stairs, but he should never climb ladders, ropes, or scaffolds. [Thomas] should additionally avoid concentrated exposure to fumes, odors, gases, and poor ventilation.

(<u>See</u> page 12 above.)

ALJ Miller's rationale for his determination (R. 18-20) has been discussed in the prior section. ALJ Miller's RFC determination is supported by substantial evidence.

## E. Thomas Had The Ability to Perform His Past Relevant Work As A Cook

The fourth step of the five-step analysis asks whether Thomas had the RFC to perform his past relevant work. (<u>See</u> page 16 above.) ALJ Miller found that Thomas was "capable of performing past relevant work as a chef" as "this work does not require the performance of work-related activities precluded by [Thomas'] residual functional capacity." (<u>See</u> pages 12-13 above.)

ALJ Miller's conclusion is supported by the testimony of vocational expert Flomberg, who opined that Thomas has transferable cooking skills and retail sales skills. (<u>See</u> page 5 above.) Stomberg further testified that Thomas could perform a number of light strength, semi-skilled jobs, including as a sales clerk of food, a sales clerk of parts, or a sales person of general merchandise. (<u>See</u> page 5 above.)

ALJ Miller's finding that Thomas could perform his past relevant work as a cook as generally performed is sufficient to negate a finding of disability at step four. <u>See</u>, <u>e.g.</u>, <u>Alfaro</u> v.

Astrue, 09 Civ. 3756, 2011 WL 6259132 at *8 (S.D.N.Y. Dec. 6, 2011) ("Given that the vocational expert 'testified that a claimant with the above-mentioned residual functional capacity could perform work as an office clerk [and] light SVP 3 work,' the ALJ concluded that [plaintiff] is likewise capable of performing her past relevant work as an office clerk.  The ALJ noted that her work 'does not require the performance of work-related activities precluded by the claimant's residual functional capacity.'  Therefore, the ALJ determined that [plaintiff] was not disabled under the Act and did not qualify for SSI benefits." (citations omitted)).

Because Thomas did not meet his burden of proof on the fourth step of the analysis, the Court is not required to advance to the fifth step.  See 20 C.F.R. § 404.1520(a)(4) ("If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step.").[18][19]

---

[18]    Accord, e.g., Paulino v. Colvin, 13 Civ. 3718, 2014 WL 2120544 at *20 (S.D.N.Y. May 13, 2014) (Peck, M.J.); Garner v. Astrue, 08 Civ. 6367, 2009 WL 903742 at *19 (S.D.N.Y. Apr. 6, 2009) (Peck, M.J.), report & rec. adopted in part, 2009 WL 1911744 (S.D.N.Y. June 30, 2009); Gibbs v. Astrue, 07 Civ. 10563, 2008 WL 2627714 at *25 (S.D.N.Y. July 2, 2008) (Peck, M.J.), report & rec. adopted, 2008 WL 4620203 (S.D.N.Y. Oct. 16, 2008); Quezada v. Barnhart, 06 Civ. 2870, 2007 WL 1723615 at *13 (S.D.N.Y. June 15, 2007) (Peck, M.J.); Papp v. Comm'r of Soc. Sec., 05 Civ. 5695, 2006 WL 1000397 at *16 (S.D.N.Y. Apr. 18, 2006) (Peck, M.J.); Rodriguez v. Barnhart, 04 Civ. 4514, 2005 WL 643190 at *12 (S.D.N.Y. Mar. 21, 2005) (Peck, M.J.); Jiang v. Barnhart, 03 Civ. 0077, 2003 WL 21526937 at *15 (S.D.N.Y. July 8, 2003) (Peck, M.J.), report & rec. adopted, 2003 WL 21755932 (S.D.N.Y. July 30, 2003); Walzer v. Chater, 93 Civ. 6240, 1995 WL 791963 at *11 (S.D.N.Y. Sept. 26, 1995) (Kaplan, D.J. & Peck, M.J.) (citing Rivera v. Schweiker, 717 F.2d 719, 722 (2d Cir. 1983); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); Velk v. Shalala, 93 Civ. 3111, 1995 WL 217516 at *5 (S.D.N.Y. Apr. 11, 1995)).

[19]    Attached to Thomas' complaint is a July 21, 2014 letter from physician Paul De Guzman that was not a part of the administrative record; Dr. Guzman states that he has been treating Thomas since March 31, 2014 and opines that Thomas is unable perform prolonged standing, walking or sitting and should be excused from any activities.  (See Dkt. No. 2: Compl.)

(continued...)

**CONCLUSION**

For the reasons set forth above, the Commissioner's motion for judgment on the

pleadings (Dkt. No. 18) should be GRANTED.[20/]

**FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties shall have fourteen (14) days from service of this Report to file written

objections.  See also Fed. R. Civ. P. 6.  Such objections (and any responses to objections) shall be

---

[19/]    (...continued)
Although the Court cannot consider new evidence, this Court may remand to the Commissioner to consider new evidence, "but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  42 U.S.C. § 405(g).  The showing required by this provision requires, inter alia, that a claimant show good cause for his failure to present the evidence earlier and that the evidence is material to the time period for which benefits were denied.  See, e.g., Soto v. Colvin, 14, Civ. 7440, 2015 WL 1726541 *26 & n.42 (S.D.N.Y. Apr. 14, 2015) (Peck, M.J.) (collecting cases).

Thomas offers no explanation for his failure to submit the now-proffered evidence to the Appeals Council, although the Commissioner's decision did not become final until several weeks after Dr. Guzman wrote the letter.  (See page 2 above.)  Accordingly, Thomas has not shown good cause for failing to present the new evidence during the pendency of the administrative proceeding, and remand for its consideration is not warranted.  See, e.g., Soto v. Colvin, 2015 WL 1726541 at *27 (collecting cases).

Furthermore, Dr. Guzman only began treating Thomas on March 31, 2014, more than three months after the end of the period at issue (see page 2 above).  An opinion from a physician who did not provide treatment during the period in question is not relevant to determining a claimant's disability unless it reveals that the claimant's condition was far more serious than previously thought.  See, e.g., Phoenix v. Colvin, 14 Civ. 4164, 2015 WL 451016 (S.D.N.Y. Feb. 4, 2015) (Peck, M.J.) (collecting cases).  Accordingly, the Court need not order the Commissioner to consider this additional evidence.  Nothing prevents Thomas from filing a new application for benefits with the SSA based upon Dr. Guzman's opinion that he currently is unable to work.

[20/]    If Thomas requires copies of any of the cases reported only in Westlaw, he should request copies from opposing counsel.  See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009); SDNY-EDNY Local Civil Rule 7.2.

32

filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Ronnie Abrams, 40 Foley Square, Room 2203, and to my chambers, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Abrams (with a courtesy copy to my chambers).   Failure to file objections will result in a waiver of those objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); Ingram v. Herrick, 475 F. App'x 793, 793 (2d Cir. 2012); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993), cert. denied, 513 U.S. 822, 115 S. Ct. 86 (1994); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.), cert. denied, 506 U.S. 1038, 113 S. Ct. 825 (1992); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983).


Dated:        New York, New York
              July 30, 2015



                                        _____
                                        **Andrew J. Peck**
                                        United States Magistrate Judge


Copies to:    Larry Thomas (reg. & cert. mail)
              Counsel (ECF)
              Judge Abrams